Glenn D. Moses (*Pro Hac Vice*)
Joyce A. Delgado (*Pro Hac Vice*)
*Counsel to Chapter 7 Trustee*
100 Southeast Second St. 44th Floor
Miami, Florida 33131
Telephone No. (305) 349-2300
gmoses@gjb-law.com
jdelgado@gjb-law.com

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ANAN ENTERPRISE, INC., a California corporation,<br><br>Debtor.<br><br>TIN 45-2848539 | Case No. 2:20-bk-19228-ER<br>Chapter 7 |
| WESLEY H. AVERY, Chapter 7 Trustee<br><br>Plaintiff,<br><br>v.<br><br>JOHN KIM a/k/a JONG HO KIM and KYLE DONGWOOK KIM,<br><br>Defendants. | Adv. No.<br><br>**CHAPTER 7 TRUSTEE'S COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, FOR DAMAGES FOR BREACH OF FIDUCIARY DUTIES, AND FOR RELATED RELIEF** |

Plaintiff, WESLEY H. AVERY (the "**Plaintiff**" or "**Trustee**"), as Chapter 7 Trustee for ANAN ENTERPRISE, INC. (the "**Debtor**"), files this Complaint to avoid and recover fraudulent transfers and aiding and abetting breaches of fiduciary duties against Defendant, JOHN KIM a/k/a JONG HO KIM ("**John Kim**"), and for damages for breaches of fiduciary duties against

Defendant, KYLE DONGWOOK KIM ("**Kyle Kim**") (collectively, the "**Defendants**"), and alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. On October 12, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.

2. Plaintiff, Wesley H. Avery, is the Debtor's Chapter 7 Trustee.

3. Defendant John Kim was formerly the president, chief executive officer and a shareholder of the Debtor, and is a resident of the State of California.

4. Defendant John Kim is the father of Defendant Kyle Kim.

5. At all material times, John Kim was an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31)(B).

6. Defendant Kyle Kim was the president, chief executive officer and shareholder of the Debtor through the Petition Date, and is a resident of the State of California.

7. Defendant Kyle Kim is the brother in law of Albert Kim. Albert Kim was the president and controlling shareholder of Consumer Advocacy Center, Inc.

8. At all material times, Kyle Kim was an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31)(B).

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

10. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O). The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

12. At all material times, the Debtor was inadequately capitalized, was insolvent, and/or was otherwise unable to pay its debts as such debts matured or became due, or was engaged

in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

13. All conditions precedent to the filing of this action have been performed, occurred, waived or have otherwise been excused.

## FACTS COMMON TO ALL COUNTS

### The Debtor's Business

14. Formed in or around 2012, the Debtor was engaged in the business of manufacturing and selling women's clothing.

15. The Debtor's president, CEO and controlling shareholder from its inception through approximately 2017 was John Kim. Thereafter, in or about 2017, John Kim transferred management and control in the Debtor to his son, Kyle Kim, who became the Debtor's president, CEO and controlling shareholder.

16. Following the loss of its most significant customer, Charlotte Russe (defined herein) in February 2019 due to its bankruptcy filing, the Debtor transferred a substantial portion of its remaining cash, or $810,000.00, to Defendant John Kim in March 2019.

17. The Debtor filed for chapter 7 bankruptcy the following year, on the Petition Date.

### The Consumer Fraud Scheme
### (Consumer Advocacy Center and Related Parties)

18. Before it filed for bankruptcy, Consumer Advocacy Center, Inc. ("**Consumer Advocacy**") was purportedly in the business of providing student loan debt relief services. Instead, Consumer Advocacy and certain related entities operated an unlawful debt relief enterprise that deceived thousands of federal student loan borrowers and collected millions in illicit advance fees in violation of various federal and state consumer protection laws.

19. The president and controlling shareholder of Consumer Advocacy was an individual known as Albert Kim ("**Albert Kim**").

3

20. Albert Kim is the brother-in-law of Defendant Kyle Kim.

21. Consumer Advocacy, through Albert Kim, misappropriated and misdirected consumer funds that were supposed to have been used for the debt relief services promised to consumers. Instead, the funds were misused to, among other things, support the lifestyles of certain of Consumer Advocacy and related entities' insiders, officers, directors, and control persons, which provided no benefit to creditors or consumers.

22. Facing investigation and scrutiny from law enforcement and federal and state regulators, Consumer Advocacy and Albert Kim transferred Consumer Advocacy's purported debt relief operation to related corporate entities in late 2019 and otherwise further drained and transferred assets out of Consumer Advocacy. Several months later, Albert Kim caused Consumer Advocacy to file for bankruptcy in Florida Bankruptcy Court.

**The Enforcement Action**

23. On October 21, 2019, the Federal Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina and the State of California (collectively, the "**Governments**") filed a Complaint in the United States District Court for the Central District of California (the "**District Court**") against Consumer Advocacy and certain related entities and individuals, including Albert Kim, captioned *Bureau of Consumer Financial Protection, et al., v. Consumer Advocacy Center, Inc., True Count Staffing, Inc., Prime Consulting, LLC, Albert Kim, Kaine Wen, and Tuong Nguyen, Defendants, and Infinite Management Corp., Hold the Door Corp. and TN Accounting, Inc., Relief Defendants,* Case No. 19-cv-01998-JVS (the "**Enforcement Action**"), which complaint was later amended to add certain other defendants.

24. As alleged by the Governments in the Enforcement Action, Consumer Advocacy, through Albert Kim and other defendants named therein, operated a debt-relief enterprise since at least 2015 which deceived thousands of federal student loan borrowers and collected millions in

unlawful advance fees in violation of various federal and state consumer protection laws, including the Consumer Financial Protection Act of 2010 and the Telemarketing and Consumer Fraud and Abuse Prevention Act.

25. On November 15, 2019, the District Court entered a *Stipulated Preliminary Injunction With Asset Freeze, Appointment of Receiver, and Other Equitable Relief* [ECF No. 103 in the Enforcement Action] (the "**Preliminary Injunction**"). In the Preliminary Injunction, the District Court found that good cause existed to conclude that Consumer Advocacy and Albert Kim, among other things, violated federal and state consumer protection laws, and further concluded that the Governments were likely to prevail on the merits. Notably, the Preliminary Injunction was entered into with the agreement of all other defendants to the litigation.

26. Since then, the vast majority of the defendants in the Enforcement Action have stipulated to substantial final monetary judgments, as well as among other things a permanent ban on telemarketing and offering debt relief services.

27. On July 12, 2021, Consumer Advocacy Center stipulated that it engaged in false, misleading and deceptive practices in violation of federal and state consumer protection laws, and further stipulated to a $35 million judgment in the Enforcement Action.

28. On June 10, 2022, a Stipulated Final Judgment was entered against Albert Kim in the amount of $95 million, in addition to other relief including a permanent ban against engaging in telemarketing or debt relief services as well as to making misrepresentations concerning consumer services.

**The Fraudulent Transfers from Consumer Advocacy to the Debtor,
and the Bankruptcy Filing By Consumer Advocacy**

29. Between April 2017 and September 2018, Consumer Advocacy transferred the aggregate sum of $3,643,000.00 to the Debtor (the "**Anan Transfers**").

30. Pursuant to the testimony of Albert Kim, the alleged purpose of the Anan Transfers – made to his brother-in-law's business – was to create "marketing brochures" that were never made. This was so notwithstanding that the Debtor, Anan Enterprise, (a) was not in the business of making marketing brochures but rather was in the garment wholesale business, (b) had never made marketing brochures before, (c) the suggested "marketing brochures" (which were never made) would not have reasonably cost anywhere near $3.6 million, (d) there was no written agreement or documents to support the alleged basis for the transfers, (e) the transfers continued to be made over a seventeen (17) month period notwithstanding that no brochures were ever made or any consideration provided, and (f) there was no credible explanation as to why the Anan Transfers continued to be made over an extended period of time while Consumer Advocacy received nothing in return. The Anan Transfers were also made during a time when Consumer Advocacy was facing scrutiny from state and federal regulators on account of its scheme to defraud consumers. In short, the Anan Transfers were patently avoidable fraudulent transfers.

31. On January 16, 2019, Consumer Advocacy filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "**Florida Bankruptcy Court**").[1]

32. Shortly thereafter, on July 31, 2019, the Florida Bankruptcy Court entered an Order directing the appointment of a Chapter 11 Trustee for Consumer Advocacy.

33. On August 20, 2019, the Florida Bankruptcy Court converted the Consumer Advocacy case to a Chapter 7 proceeding. Sonya S. Slott was appointed as Consumer Advocacy's Chapter 7 Trustee (the "**Consumer Advocacy Trustee**").

---

[1] Neither Consumer Advocacy nor the other entities or individuals running the student debt relief operation had any business interests in Florida, all of which were based in California. Albert Kim caused Consumer Advocacy to enter into a lease for a small office in Fort Lauderdale, Florida to create jurisdiction there, in a misguided attempt to avoid the Governments' investigation and ultimate prosecution of their claims.

34. On December 30, 2019, the Consumer Advocacy Trustee sued the Debtor in the Florida Bankruptcy Court to avoid and recover the Anan Transfers as fraudulent transfers, in a matter captioned *Sonya Salkin Slott, Chapter 7 Trustee v. Anan Enterprise, Inc.*, Adv. No. 19-01960-JKO. As that case approached trial, the Debtor filed for chapter 7 bankruptcy.

### The Charlotte Russe Bankruptcy

35. On February 3, 2019, Charlotte Russe Holding, Inc. and certain of its affiliates (collectively, "**Charlotte Russe**") filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "**Charlotte Russe Bankruptcy**").

36. The Debtor testified that the Charlotte Russe, a retailer of clothing for young women, was a principal source of the Debtor's business and was its largest customer. The Debtor further testified that the Charlotte Russe Bankruptcy ruined the Debtor's business.

37. Following the Charlotte Russe Bankruptcy, the Debtor was unable to satisfy its obligations.

38. As set forth herein, the Debtor transferred the sum of $810,000.00 to John Kim just over one month after the Charlotte Russe Bankruptcy filing.

### The Fraudulent Transfers
### (From the Debtor to John Kim)

39. Notwithstanding that he no longer had any ownership in the Debtor or management control at the time of the Transfers (defined below), John Kim caused the Debtor to make the following transfers to himself (collectively, the "**Transfers**"):

   a. $50,000.00, by check dated January 12, 2018 (the "**January 12, 2018 Transfer**");

   b. $310,000.00, by cashier's check dated March 8, 2019 (the "**March 8, 2019 Transfer**"); and

   c. $500,000.00, by check dated March 11, 2019 (the "**March 11, 2019 Transfer**")

7

40. Prior to the dates of the Transfers, John Kim had transferred ownership and control in the Debtor to his son, Kyle Kim.

41. Kyle Kim approved of the Transfers made from the Debtor to his father, John Kim.

42. At or around the same time, the Debtor was being sued by a vendor, Fashion Up, Inc., in an amount exceeding $1 million on account of merchandise delivered between November 2018 and January 2019 that was not paid for.

### The Defendants' Faulty Explanation for the Basis and Disposition of the Fraudulent Transfers

43. Defendants each testified that the basis for the Transfers was to repay a debt allegedly owing to Consumer Advocacy on account of the fraudulent Anan Transfers made between April 2017 and September 2018.

44. However, the Transfers were not made to Consumer Advocacy to repay any debt. Rather, the Transfers were paid directly to John Kim.

45. John Kim testified that he received each of the Transfers, deposited the Transfers into his bank account, and then withdrew cash to pay Albert Kim of Consumer Advocacy in cash.

46. John Kim failed to produce any records evidencing that he withdrew cash from his bank account and paid Consumer Advocacy Center consistent with his testimony.

47. Defendants failed to provide a good faith explanation as to why, if the Debtor was actually repaying a debt to Consumer Advocacy, the Debtor did not make the payment directly to Consumer Advocacy.

48. John Kim testified that Albert Kim of Consumer Advocacy requested the payments be made to Albert Kim in cash, instead of checks payable to Consumer Advocacy.

49. Consumer Advocacy never received any payments from the Debtor on account of repayment of the Anan Transfers or otherwise.

8

50. Significantly, as of the time of the March 8, 2019 Transfer and the March 11, 2019 Transfer (totaling $810,000.00), Consumer Advocacy was in bankruptcy and a chapter 11 debtor-in-possession in the Florida Bankruptcy Court.

51. As a chapter 11 debtor in bankruptcy, Consumer Advocacy was obligated to account for all funds received in monthly operating reports that were filed with the Florida Bankruptcy Court.

52. There are no records of Consumer Advocacy receiving any payments of cash or otherwise from the Debtor or John Kim.

53. Moreover, the pre-petition bank records of Consumer Advocacy do not reflect the receipt of any funds from the Debtor or John Kim on account of the January 12, 2018 Transfer.

54. John Kim further testified that he made a payment in October 2018 in the amount of $300,000.00, at the request of Albert Kim, to an individual named Judy Dai. As set forth above, Judy Dai is the mother of Kaine Wen, one of the control persons who ran the consumer debt relief scam along with Albert Kim. Ms. Dai stipulated to a Final Judgment against her in the Enforcement Action on June 15, 2021 in an amount up to $3 million plus an additional $88,381.80 in damages. There is no record of Consumer Advocacy receiving any money from Ms. Dai on account of this $300,000 alleged transfer or otherwise.

55. As a result, the Consumer Advocacy debt was never repaid from the Transfers or their proceeds.

56. The Debtor received no consideration in exchange for the Transfers.

57. Defendants knew or should have known that as of the time of the March 8, 2019 Transfer and the March 11, 2019 Transfer, Consumer Advocacy was in a bankruptcy proceeding.

58. Moreover, the alleged request by Albert Kim to make payments totaling $860,000 "in cash" rather than by check directly to the entity that was purportedly owed the money

(Consumer Advocacy) should have raised "red flags" that the transactions were suspect and designed to avoid scrutiny.

59. Kyle Kim was the president and the CEO of the Debtor at the time of the Transfers. He did not question why the Transfers were made to his father, John Kim, instead of Consumer Advocacy if the purported reason for the Transfers was to repay a debt to Consumer Advocacy. He did not question why the alleged payments to Albert Kim were purportedly made "in cash" rather than by check directly to Consumer Advocacy. He testified that he did not know why the purported transfers were made that way. Consumer Advocacy never received the money and as a result, the Debtor was damaged. Further, Kyle Kim allowed the Transfers to be made to his father following the loss of the Debtor's most significant customer and at a time when the Debtor was unable to pay its obligations.

## COUNT I

## AVOIDANCE OF FRAUDULENT TRANSFERS
## UNDER 11 U.S.C. § 548(A)(1)(A)
## (Against John Kim)

60. Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

61. Pursuant to 11 U.S.C. §548(a)(1)(A) and 11 U.S.C. §544, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

> made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; . . .

62. The Transfers constituted transfers of an interest of the Debtor in property made within two years of the Petition Date.

63.     The Transfers were made with actual intent to hinder, delay or defraud creditors of the Debtor, and such Transfers were not received in good faith by Defendant John Kim.

64.     Among other badges of fraud and/or lack of good faith, at or near the time of the Transfers: (a) the Debtor had been transferred the sum of over $3.6 million for no consideration (allegedly for marketing brochures that were never made by a company that was never in the business of making marketing brochures) from Consumer Advocacy, a company (i) run by Kyle Kim's brother in law, (ii) which was operating an unlawful debt-relief enterprise in violation of federal and state consumer protection laws, (iii) under the scrutiny of federal and state regulators, and (iv) ultimately subject to the Enforcement Action; (b) the purpose of the Transfers was purportedly to repay an alleged "debt" due to Consumer Advocacy, yet instead of paying the money directly to Consumer Advocacy, the Transfers were made from the Debtor to John Kim, who claims to have deposited the money in his bank account and then withdrew "cash" to pay Albert Kim on behalf of Consumer Advocacy, (c) the alleged "cash payments" to Albert Kim were made when Consumer Advocacy was the subject of its own bankruptcy proceeding, (d) Defendant Kyle Kim, the president and CEO of the Debtor at the time of the Transfers, did not question why the Transfers were made to his father John Kim as opposed to Consumer Advocacy, (e) Defendant Kyle Kim, the president and CEO of the Debtor at the time of the Transfers, did not question why the Albert Kim allegedly requested the payments on account of the Anan Transfers were to be made in cash as opposed to directly to Consumer Advocacy, (f) Defendants, given the close familial relationship to Albert Kim, knew or should have known at the time of the Transfers, that Consumer Advocacy was in its own bankruptcy proceeding, (g) the majority of the Transfers were made following the loss of the Debtor's most significant customer, Charlotte Russe, and at a time when the Debtor could not sustain its operations and pay all of its obligations to creditors,

and (h) the Debtor received no consideration in exchange for the Transfers, which were never paid to Consumer Advocacy.

**WHEREFORE**, Plaintiff, Wesley H. Avery, as Chapter 7 Trustee for the Debtor, Anan Enterprise, Inc., demands judgment against Defendant John Kim (a) determining that the Transfers are avoidable under 11 U.S.C. §548(a)(1)(A); (b) avoiding the Transfers; (c) disallowing any claim that Defendant John Kim may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); (d) for prejudgment interest; (d) for costs; and (e) for such other and further relief as the Court deems just and proper.

## COUNT II

### AVOIDANCE OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 548(A)(1)(B)
### (Against John Kim)

65. Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

66. Defendant John Kim provided no consideration to the Debtor in exchange for the Transfers.

67. The Debtor received no consideration in exchange for the Transfers.

68. Pursuant to 11 U.S.C. §548(a)(1)(B) and 11 U.S.C. §544, a trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two years (under Section 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

or

   (III) intended to incur, or believed that the debtor would
   incur, debts that would be beyond the debtor's ability to pay
   as such debts matured.

69. The Transfers constituted transfers of an interest of the Debtor in property made within two years of the Petition Date.

70. The Transfers constitute constructively fraudulent transfers of interests in property of the Debtor avoidable under 11 U.S.C. §548(a)(1)(B), as the Debtor (i) did not receive reasonably equivalent value at the time such Transfers were made to Defendant John Kim; (ii) was insolvent at the time the Transfers were made or became insolvent as a result thereof; (iii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor was unreasonably small in relation to the business or transaction; or (iv) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

**WHEREFORE**, Plaintiff, Wesley H. Avery, as Chapter 7 Trustee for the Debtor, Anan Enterprise, Inc., demands judgment against Defendant John Kim (a) determining that the Transfers are avoidable under 11 U.S.C. §548(a)(1)(B); (b) avoiding the Transfers; (c) disallowing any claim that Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. §502(d); (d) for prejudgment interest; (d) for costs; and (e) for such other and further relief as the Court deems just and proper.

### COUNT III

### BREACH OF FIDUCIARY DUTY
(Against Kyle Kim)

71. Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

72. This is an action by the Trustee for breach of fiduciary duty against the Defendant, Kyle Kim.

13

73. At all material times, Defendant Kyle Kim was an officer and director of the Debtor and, as such, owed the Debtor and its creditors a fiduciary duty to discharge his duties in good faith, with the care that an ordinarily prudent officer, or director, in a like position, would exercise, and in a manner reasonably believed to be in the best financial interests of the Debtor and its business.

74. Due to the close familial and business relationship with Albert Kim, Kyle Kim knew or should have known that Consumer Advocacy was in its own bankruptcy proceeding at the time of the Transfers and was otherwise subject to state and federal scrutiny at the time of the Transfers.

75. Defendant Kyle Kim breached his fiduciary duties owed to the Debtor by, among other things, exhibiting a willful, reckless and/or negligent disregard for the best financial interests of the Debtor; including without limitation: (a) allowing his father, John Kim, to cause the Transfers to be made to himself rather than to Consumer Advocacy, (b) not questioning why the Transfers were made to his father, John Kim, instead of Consumer Advocacy if the purported reason for the Transfers was to repay a debt to Consumer Advocacy, (c) not questioning why the alleged payments to Albert Kim were purportedly made "in cash" rather than by check directly to Consumer Advocacy, (d) allowing the Transfers to be made to his father following the loss of the Debtor's most significant customer and at a time when the Debtor was unable to pay its obligations, (e) ignoring the "red flags" of the alleged use of "cash payments" of $860,000 to be indirectly paid to a creditor, Consumer Advocacy, which never received the money.

76. Kyle Kim breached his fiduciary duties while the Debtor was insolvent or was rendered insolvent by virtue of the Transfers.

77. The breaches of fiduciary duties owed by Kyle Kim to the Debtor actually and proximately caused financial injury to the Debtor in the amount of at least $860,000.00,

representing the amount of the Transfers. Accordingly, Kyle Kim is liable for the damages actually and proximately caused to the Debtor through his acts, conduct and omissions as described herein.

**WHEREFORE**, Plaintiff, Wesley H. Avery, as Chapter 7 Trustee for the Debtor, Anan Enterprise, Inc., demands judgment against Defendant Kyle Kim for: (i) actual compensatory, consequential, incidental, special and exemplary/punitive damages in an amount no less than $860,000.00; (ii) such civil penalties as allowed by law; (iii) pre-judgment and post-judgment interest as allowed by law; and (iv) such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against John Kim)

78.  Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

79.  At all material times, Defendant Kyle Kim was an officer and director of the Debtor and, as such, owed the Debtor and its creditors a fiduciary duty to discharge his duties in good faith, with the care that an ordinarily prudent officer, or director, in a like position, would exercise, and in a manner reasonably believed to be in the best financial interests of the Debtor and its business.

80.  As stated above, Defendant Kyle Kim breached his fiduciary duties owed to the Debtor by, among other things, exhibiting a willful, reckless and/or negligent disregard for the best financial interests of the Debtor; including without limitation: (a) allowing his father, John Kim, to cause the Transfers to be made to himself rather than to Consumer Advocacy, (b) not questioning why the Transfers were made to his father, John Kim, instead of Consumer Advocacy if the purported reason for the Transfers was to repay a debt to Consumer Advocacy, (c) not questioning why the alleged payments to Albert Kim were purportedly made "in cash" rather than

by check directly to Consumer Advocacy, (d) allowing the Transfers to be made to his father following the loss of the Debtor's most significant customer and at a time when the Debtor was unable to pay its obligations, (e) ignoring the "red flags" of the alleged use of "cash payments" of $860,000 to be indirectly paid to a creditor, Consumer Advocacy, which never received the money.

81. Defendant John Kim had actual and constructive knowledge of the above described breaches of fiduciary duties by his son, Kyle Kim, and rendered substantial assistance in regard to such breaches as described in detail herein, including by participating in conduct that John Kim knew or should have known would have resulted in Consumer Advocacy not receiving any repayment of alleged debt due from the Debtor.

82. Accordingly, Defendant John Kim is liable for all damages actually and proximately caused to the Debtor through the acts and omissions of Defendant Kyle Kim.

**WHEREFORE**, Plaintiff, Wesley H. Avery, as Chapter 7 Trustee for the Debtor, Anan Enterprise, Inc., demands judgment against Defendant John Kim for: (i) actual compensatory, consequential, incidental, special and exemplary/punitive damages in an amount no less than $860,000.00; (ii) such civil penalties as allowed by law; (iii) pre-judgment and post-judgment interest as allowed by law; and (iv) such other and further legal and equitable relief as the Court deems just and proper

Dated October 10, 2022.

GENOVESE JOBLOVE & BATTISTA, P.A.
*Counsel for the Plaintiff, Wesley H. Avery, Trustee*
100 S.E. Second Street, Suite 4400
Miami, Florida 33131
Tel: (305) 349-2300
Fax: (305) 349-2310
Email: gmoses@gjblaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By:   /s/ Glenn D. Moses
      Glenn D. Moses, Esq.
      Joyce Delgado, Esq.

| | |
|---|---|
| In re: Anan Enterprise, Inc.<br>Debtor.<br><br>WESLEY H. AVERY, Chapter 7 Trustee,<br>Plaintiff,<br><br>v.<br><br>JOHN KIM a/k/a JONG HO KIM and<br>KYLE DONGWOOK KIM,<br>Defendants. | CHAPTER 7<br><br>CASE NUMBER 2:20-bk-19228-ER<br><br>Adv. No. |

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 100 Southeast Second Street, 44th Floor, Miami, Florida 33131.

A true and correct copy of the foregoing document **CHAPTER 7 TRUSTEE'S COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS AND FOR DAMAGES FOR BREACHES OF FIDUCIARY DUTIES AND FOR RELATED RELIEF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 10, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Wesley H Avery (TR) wamiracle6@yahoo.com, jmoattrustee@gmail.com; C117@ecfcbis.com
- Jaenam Coe, coelaw@gmail.com

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On October 10, 2022, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| |
|---|
| |

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 10, 2022 | Glenn D. Moses | /s/ Glenn D. Moses |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                           F 9013-3.1